NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

XANTERRA PARKS & RESORTS, *Petitioner Employer*,

SEDGWICK CMS, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

WILLIAM BROWN, *Respondent Employee.*

No. 1 CA-IC 16-0066
FILED 5-30-2017

Special Action – Industrial Commission
ICA Claim No. 20111-110227
Carrier Claim No. 30110427569-0001
The Honorable J. Matthew Powell, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Lester, Norton & Brozina, P.C., Phoenix
By Rachel P. Brozina
*Counsel for Petitioner Employer and Petitioner Carrier*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Fendon Law Firm, P.C., Phoenix
By Matt C. Fendon
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer B. Campbell joined.

---

**N O R R I S**, Judge:

**¶1**     In this special action from an Industrial Commission of Arizona ("ICA") award and decision upon review, Petitioner Employer, Xanterra Parks & Resorts, and Petitioner Carrier, Sedgwick CMS (collectively "Carrier"), argue the Administrative Law Judge ("ALJ") should not have modified Respondent Employee, William Brown's, supportive care award. Reviewing the ALJ's award under the governing standards of review, we disagree. *See Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003) (appellate court defers to ALJ's factual findings but reviews legal issues de novo) (citation omitted); *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002) (appellate court views evidence in light most favorable to sustaining award and will affirm award if reasonably supported by evidence) (citations omitted).

**BACKGROUND AND PROCEDURAL HISTORY**

**¶2**     In April 2011, Brown sustained an industrial injury to his lower back. In March 2013, an ALJ found Brown was stationary with ten percent permanent impairment following disc replacement surgery. The ALJ awarded Brown unscheduled permanent partial disability benefits to be determined by the ICA. The parties eventually stipulated to Brown's loss of earning capacity and the amount Brown should receive in permanent partial disability benefits.

**¶3**     In November 2013, Brown requested a hearing pursuant to Arizona Revised Statutes ("A.R.S.") section 23-1061(J) (2016) (ICA shall investigate and review claim that claimant has not been granted benefits to which he is entitled), alleging the Carrier had improperly denied Brown's

request for supportive care.[1] In March 2014, before the ICA could hold a hearing on his request, the parties resolved Brown's request, and the Carrier issued a "Notice of Supportive Medical Maintenance Benefits" (the "March Award"). The March Award authorized Brown to receive four office visits per year, oxycodone, and cyclobenzaprine. The March Award stated the award of supportive care would be reviewed annually.

¶4        In October 2014, Brown requested a hearing pursuant to A.R.S. § 23-1061(J) to modify the March Award, explaining his treating physician, Steven Beck, M.D., recommended monitoring Brown every four to six weeks to properly manage his pain. The parties resolved Brown's request by stipulation and the Carrier authorized up to eight visits per year with Dr. Beck. The stipulation made no other modifications to the March Award. An ALJ approved the stipulation modifying the March Award in November 2014 (the "November Award").

¶5        Roughly one month later, in December 2014, Brown requested a hearing pursuant to A.R.S. § 23-1061(J) to modify his supportive care, requesting additional medication, coverage for a MRI, and epidural steroid injections. An ALJ held a hearing on Brown's request. After considering the evidence, the ALJ issued an award modifying Brown's supportive care to include additional medication, a MRI, and epidural steroid injections.

**DISCUSSION**

¶6        The Carrier argues, first, issue preclusion barred Brown's December 2014 request to modify the March Award, as modified by the November Award, and, second, Brown failed to establish a qualitative change in his condition to warrant expanding the November Award. Although the Carrier frames these as separate issues, resolution of these arguments turns on whether Brown established he had experienced a qualitative change in his physical condition. *See Brown v. Indus. Comm'n*, 199 Ariz. 521, 524, ¶ 14, 19 P.3d 1237, 1240 (App. 2001) (when a party moves to change supportive care award, issue preclusion applies in absence of evidence that party's physical condition or medical procedures are qualitatively different from prior proceeding) (citation omitted). The ALJ found Brown experienced a qualitative change in his physical condition

---

[1]A supportive care award is similar to that awarded to a claimant who has a temporary disability due to an industrial aggravation of a preexisting condition; in that case, the claimant is entitled to benefits until the aggravation becomes stationary. *Capuano v. Indus. Comm'n*, 150 Ariz. 224, 226, 722 P.2d 392, 394 (App. 1986) (citation omitted).

and, as we discuss below, the ALJ's finding was supported by reasonable evidence.

¶7        At the beginning of the hearing before the ALJ, the parties agreed that if Brown had experienced a "qualitatively-different change" in care from the November Award, a change in his supportive care award would be appropriate pursuant to *Brown*. Dr. Beck testified that since the November Award, "there could be something developing above or below [the site of Brown's disc replacement surgery] and . . . it made sense to investigate that." When asked about Brown's pain, Dr. Beck responded, "the amount of leg pain and intensity that he reports to me has increased and has on a fairly consistent basis." In discussing Brown's treatment, Dr. Beck explained, "the reason that I've made the changes [to Brown's treatment regimen] and recommended the epidurals and the MRIs recently is because we've moved . . . into a period where he's functioning less." Finally, Brown's counsel asked Dr. Beck, "Has [Brown's] condition changed significantly since November 2014?" Dr. Beck testified in the affirmative, explaining:

> Well, I think that his, that the radiculopathy, the amount of leg pain and intensity that he reports to me has increased and has on a fairly consistent basis. He was a little bit weaker in the left lower leg and seemed to be getting less out of treatment.

¶8        Stephen Borowsky, M.D., who examined Brown at the Carrier's request, testified Brown had received injections in the past and "there was no reason to reproduce those." He testified Brown's medications should "not escalate until we could determine whether there is a physical orthopedic spine problem that warrants treatment." He added Brown was not responding to an increase in medications and "[h]e was really no better" from the increased medication.

¶9        Jason Datta, M.D. also examined Brown at the Carrier's request. Dr. Datta reported Brown "has significant functional overlay" and "has demonstrated typical findings for prolonged chronic opioid usage with a tolerance developing and a necessity for feeling of needing more pain medication for pain control not necessarily worsening symptoms." Therefore, he did not recommend a change in Brown's care.

¶10        We acknowledge the conflicts between Dr. Beck's opinions and the opinions of Drs. Borowsky and Datta. Conflicts in evidence, however, are resolved by the ALJ sitting as the trier of fact, not this court.

*Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46, 749 P.2d 1364, 1367 (1988) (citation omitted). Given Dr. Beck's testimony, reasonable evidence supports the ALJ's conclusion Brown had experienced a qualitative change in his physical condition from the November Award, and we must affirm the ALJ's modification of supportive care. *See Lovitch*, 202 Ariz. at 105, ¶ 16, 41 P.3d at 643.

## CONCLUSION

¶11　　　　　For the foregoing reasons, we affirm the ALJ's award and decision upon review.



AMY M. WOOD • Clerk of the Court
FILED: AA